In re **DISCIPLINARY PROCEEDINGS Governed by Rule 2.04(d), M.D.Fla. Rules, REGARDING John DOE, an Assistant United States Attorney.**

No. 92–122 MISC–J–16.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 26, 1993.

---

Before MOORE, Chief Judge, and HODGES and SCHLESINGER, District Judges.

## *OPINION*

Under Rule 2.04(d)(2) of the rules of this court, whenever a grievance committee of the court reports that there is a probable cause to believe that a member of the bar has been guilty of unprofessional or unethical conduct, the Chief Judge is obliged to constitute a three judge court to hear and determine the matter. This is such a case and we sit as a three-judge court. We have decided, however, on the basis of the committee report alone,[1] that no further proceedings are warranted. Yet, because the issue presented is one that is likely to recur in this district as it has elsewhere, we write to explain our decision for the benefit and future guidance of the Middle District bar.

Rule 2.04(c), M.D.Fla.Rules, provides that "the professional conduct of all members of the bar of this court ... shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar." The ABA Model Rule involved in this case is Rule 4.2, modified and adopted in Florida as Rule 4–4.2. See *Rules Regulating The Florida Bar,* 494 So.2d 977, 1065 (Fla.1986). The Florida rule provides:

> 4–4.2. *Communication with person represented by counsel.* In representing a client, a lawyer shall not communicate about the subject of the representation with a [party] person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer [or is authorized by law to do so].

---

1. The rule contemplates that, ordinarily, when the grievance committee makes a finding and report of probable cause, an order to show cause is entered and a confidential evidentiary hearing is conducted after the accused member of the bar is given an opportunity to respond to that order.

The bracketed language appears in the ABA Model Rules but not in the Florida rules. Thus, in Florida, "party" was changed to "person," and the phrase "or is authorized by law to do so" was deleted.

The issue presented is whether Rule 4–4.2 is violated by an Assistant United States Attorney who (a) interviews or causes an agent to interview the employees of a corporation which is (b) the subject of an on-going grand jury investigation and is (c) represented by counsel concerning the subject of that investigation but (d) such counsel is not given notice and has not consented to the interview of the corporate employees.

The facts, as reported by the grievance committee, are these. During the course of a grand jury investigation of the activities of a corporation,[2] an Assistant United States Attorney directed federal law enforcement agents to interview a secretary employed by that corporation. The corporation was then represented by counsel employed with respect to the subject of the investigation and this fact was known to the Assistant United States Attorney. The corporation's lawyer was not notified of the impending interview and did not consent to it. When telephoned by the agents, the secretary agreed to the interview and invited the agents to her home. On arrival the agents asked the secretary whether or not she had an attorney. When she responded in the negative, the agents informed her that she had a right to have an attorney present, including the attorney for her corporate employer if she so desired. She declined and proceeded to answer the agents' questions (which related to certain computer codes used in her work). The interview was completed in about ten minutes.

Later, a bookkeeper employed by the corporation was also approached by the agents under direction of the Assistant United States Attorney, again without the knowledge or consent of corporate counsel. When questioned by the agents the bookkeeper informed them that she did not wish to be interviewed and that was the end of the conversation.

The comment following Florida Rule 4–4.2 contains, in pertinent part, the following passage (494 So.2d at 1065–1066):

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4–3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

■ Here, one of the defenses urged before the grievance committee by the Assistant United States Attorney was that the subjects of the interviews—the secretary and the bookkeeper—were not managerial employees nor were their statements likely to be imputed to the corporation or to constitute an admission on the part of the corporation. The grievance committee concluded, however, and we think rightly so, that the ultimate legal effect or admissibility of statements taken from employees is not the appropriate standard by which to measure the propriety of a prosecutor's contact with corporate employees. To predicate application of Rule 4–4.2 on what a court ultimately rules on these issues—a ruling which may well depend in part on other facts not known at the time of the communication in question—would create an unworkable standard by which attorneys would be required to govern their conduct. We think instead, in keeping with the comment following Rule 4–4.2, that the rule should apply when it is known that the corporate employee involved is a managerial person or there is any significant likelihood that the lawyer initiating the commu-

---

**2.** The anonymity of all persons will be preserved given the nature of the proceeding and the ex-

plicit provision for confidentiality contained in Rule 2.04(d), M.D.Fla.Rules.

nication may seek to use the employee's statement against the corporation in subsequent proceedings.

■ That brings us, then, to the broader question of whether Rule 4–4.2 has any application at all to government lawyers conducting (or directing) non-custodial interviews of corporate employees during the investigative process before the initiation of criminal proceedings but at a time when the prosecutor knows that corporate counsel is acting in the matter for the corporation and the employee to be interviewed may have information that could be used against the corporation.[3]

While that issue is new both to this court and to the Eleventh Circuit, it has been decided elsewhere on several occasions.[4] The most recent opinion at the circuit level is the Tenth Circuit decision in *United States v. Ryans*, 903 F.2d 731 (10th Cir.1990), *cert. denied*, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). The court in *Ryans* recognized that at least three circuits—the D. C. Circuit in *United States v. Lemonakis*, 485 F.2d 941, 955 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974) and *United States v. Sutton*, 801 F.2d 1346, 1366 (D.C.Cir.1986); the Eighth Circuit in *United States v. Fitterer*, 710 F.2d 1328, 1333 (8th Cir.1983), *cert. denied*, 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983); and the Ninth Circuit in *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.1981), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981)—have all held that the so-called anti-contact rule simply does not apply in the case of a non-custodial interrogation which occurs in a criminal investigation that has not then ripened into formal criminal proceedings such as the making of an arrest, the filing of a complaint or the return of an indictment. *Id.* at 735–736. The *Ryans* court further noted

that three other circuits—the Fifth, the Seventh and the Tenth—have all held that the rule either does or may apply to a *custodial*, pre-indictment interview of a defendant in the absence of and without the consent of counsel (*United States v. Killian*, 639 F.2d 206, 210 (5th Cir.1981), *cert. denied* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Durham*, 475 F.2d 208, 211 (7th Cir.1973), and *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir.1973), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160, (1973)); and only the Second Circuit has purported to apply the rule in a non-custodial, pre-indictment setting. *United States v. Hammad*, 858 F.2d 834 (2d Cir.1988), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). *Id.* at 736. The *Ryans* court then held (903 F.2d at 739):

We must disagree with the *Hammad* opinion's interpretation of the rule. We are not convinced that the language of the rule calls for its application to the investigative phase of law enforcement. In contrast to DR 7–104(A)(2), which prohibits a lawyer representing a client from giving advice to a "person" who is not represented by counsel, DR 7–104(A)(1) prohibits communications with a "party." Black's Law Dictionary defines party as "a litigant, or a person directly interested in the subject matter of a case." Moreover, the rule concerns a lawyer's conduct "[d]uring the course of his representation of a client," and is limited to communication "on the subject matter of the representation" with a party represented by counsel "in that matter." Although the Code does not define these terms, the rule appears to contemplate an adversarial relationship between litigants, whether in a criminal or a civil setting. This interpretation is consistent with the policies underlying the disciplinary rule and the ethical canon from

---

**3.** The grievance committee concluded in this instance that because the employees were approached for information relating to their work, any statements by them arguably could be admissible in evidence against the corporation under Rule 801(d)(2)(D), F.R.E., citing *Wilkinson v. Carnival Cruise Line, Inc.*, 920 F.2d 1560, 1564–67 (11th Cir.1991). Following the standard previously discussed, therefore, the committee concluded that Rule 4–4.2 applied regardless of the *results* of the communication, i.e., whether any

statements were actually obtained which could have been used against the corporation. We take the same approach.

**4.** Most of the decisions involve the predecessor of Rule 4.2 of the ABA Model Rules of Professional Conduct (1983), namely the corresponding provisions of DR 7–104(A)(1) of the ABA Model Code of Professional Responsibility (1970).

which it derives. We agree, for example, with the District of Columbia Circuit's conclusion that the contours of the "subject matter of the representation" are uncertain during the investigative stage of the case, and therefore less susceptible to the damage of "artful" legal questions which the disciplinary rule is designed in part to avoid. *See Lemonakis,* 485 F.2d at 956.

We choose to follow the Tenth Circuit's decision in *Ryans,* as well as the other circuits that have reached the same result, and we hold that Rule 4–4.2 does not apply to non-custodial communications with corporate employees during criminal investigations (including grand jury investigations) that have not become formal proceedings initiated by the making of an arrest, the filing of a complaint or the return of an indictment. In so holding we recognize, as pointed out earlier, that the Florida formulation of the ethical rule is broader than the ABA Model Rule 4.2 in that "person" was substituted for "party," and that the qualifying phrase "or is authorized by law to do so" was deleted. Nevertheless, we believe that the other references in the rule to "representing a client" in relation to communications concerning "the subject of the representation" and made "in the matter," all contemplate, as the court held in *Ryans,* an adversarial relationship between litigants, not a mere investigation. As one state court has said:

> The weightiest of all arguments against the appellant's position [that Model Rule 4.2 applies in an investigative setting] is the one based upon simple common sense. If the law were as the appellant urges it upon us, there could be little effective investigation of any sophisticated and organized criminal enterprise. A successful case, for instance against insider trading on Wall Street may depend upon hundreds of confidential interviews of employees, many of whom will insist upon anonymity. It would be difficult to maintain anonymity if the boss's lawyer were present at the interview.

*In re Criminal Investigation No. 13,* 82 Md. App. 609, 573 A.2d 51, 55 (1990).

We are also mindful of the fact that the Committee on Professional Ethics of The Florida Bar has issued an opinion to the effect that Rule 4–4.2 is applicable to federal prosecutors (a conclusion with which we agree), but other portions of that opinion might be read as being inconsistent with the result we reach here. See, Florida Bar Ethics Opinion 90–4, July 15, 1990 (1990 WL 446959). Specifically, that opinion states:

> The Committee acknowledges the potential problems raised [by the Government], but believes that Rule 4–4.2 can be applied in a manner that minimizes or eliminates those concerns. In covert investigation situations, for example, applying the rule according to its express terms should not impede most covert investigations. A Justice Department attorney's knowledge that a person is represented in connection with a particular matter is required before the rule is triggered. In the case of an undercover investigation, it seems unlikely that the typical suspect will be represented with respect to that particular matter because at that time he or she usually will not be aware that there is a "matter." The memorandum also raises the concern that career criminals will retain "house counsel" in an effort to use Rule 4–4.2 to frustrate investigations. The Committee believes that a relatively small number of criminals have "house counsel" on permanent retainer; with respect to those few who do, it can be argued that the rule would not be triggered until the suspect referred the particular matter in question to his or her "house counsel."

That the rule should not impede "most" covert investigations, or the fact that "a relatively small number of criminals have 'house counsel' ", is to us an unsatisfactory interpretation and result. Government lawyers, and the courts and other lawyers for that matter, need and are entitled to have a bright line in this area separating ethical from unethical behavior. Thus, to the extent our holding today is inconsistent with Florida Bar Ethics Opinion 90–4, we choose not to follow that opinion.[5]

---

5. We do not regard the provisions of our Rule 2.04(c), M.D.Fla.Rules, borrowing and adopting

the Florida Rules of Professional Conduct, as an adoption also of the opinions of the Ethics Com-

The report of the grievance committee in this instance is rejected and no further action will be taken by the court in this proceeding.

DONE and ORDERED.

mittee of The Florida Bar or even the decisions of the Supreme Court of Florida interpreting those rules. While the opinions of the Committee and of the Supreme Court of the state are highly persuasive, this court must retain the right to interpret and apply the rules in the federal setting. That responsibility and authority may not be abdicated to the state system. C.f. *In re Wilkes,* 494 F.2d 472, 474–75 (5th Cir.1974).