BAYBROOK HOMES, INC., Plaintiff,

v.

BANYAN CONSTRUCTION & DEVEL-OPMENT, INC., a Florida corporation, N.T.J.C., Inc., a Florida corporation d/b/a Duracraft Homes and William Roberts, an individual and as doing business under the fictitious name of South Lake Residential Design, Defendants.

No. 96–1130–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 10, 1997.

Herbert L. Allen, Allen, Dyer, Doppelt, Milbrath, & Gilchrist, P.A., Orlando, FL, Robert B. White, Jr., Sobering, White & Luczak, P.A., Orlando, FL, for Baybrook Homes, Inc., plaintiff.

F. Bradley Hassell, Eubank, Hassell & Associates, Daytona Beach, FL, for Banyan Construction & Development, Inc., a Florida corporation, defendant.

Richards H. Ford, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, Orlando, FL, for N.T.J.C., Inc.

Phillip Stuart Smith, McLin, Burnsed, Morrison, Johnson, Newman & Roy, P.A., Leesburg, FL, for William Roberts.

## ORDER

FAWSETT, District Judge.

This case is before the Court on the following matters: 1) Defendant N.T.J.C.'s Motion for Leave to File Reply to Plaintiff's Response to Opposition to Magistrate's Report and Recommendation (Doc. No. 60, filed August 20, 1997) is DENIED. 2) Report and Recommendation of the United States Magistrate Judge (Doc. No. 55, filed July 9, 1997), Defendant N.T.J.C.'s Opposition to Magistrate's Report and Recommendation (Doc. No. 57, filed July 21, 1997), Plaintiff's Response to Opposition to Magistrate's Report and Recommendation by Defendant, N.T.J.C., Inc. (Doc. No. 58, filed August 6, 1997), and Defendant N.T.J.C.'s Notice to the Court (Doc. No. 59, filed August 20, 1997).

The Court shall make a de novo determination of those portions of the United States Magistrate Judge's report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1). The Court is authorized to accept, reject, or modify, in whole or in part, the findings or recommendation made by the United States Magistrate Judge. *Id.*

This matter initially arose out of Defendant N.T.J.C.'s Motion to Disqualify Plaintiff's Law Firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist and Co-Counsel, Sobering, White & Luczak and for Protective Order (Doc. No. 31, filed April 15, 1997). Essentially, N.T.J.C. argues that the law of disqualification should be extended to disqualify the co-counsel of an attorney who was disqualified because he possessed imputed, rather than actual, knowledge of a client's confidences. N.T.J.C. contends the Court should impute the knowledge of the attorney to his co-counsel in a separate law firm.

Acknowledging that no client confidences were given to either the disqualified attorney or to his co-counsel, N.T.J.C.'s arguments in its Opposition to the Report and Recommendation focus on the issue of whether the appearance of impropriety is the proper standard to require disqualification. However, these arguments were explored in the United States Magistrate Judge's Report and Recommendation (Doc. No. 55 at 5–6). After carefully reviewing the case law and Model Rules relevant to disqualification, the Court finds no error in the United States Magistrate Judge's Report and Recommendation.

▇▇▇ Moreover, even if the Court were to adopt the appearance of impropriety standard, which is the most liberal disqualification standard, disqualification would not be warranted in this case. Imputing knowledge to an attorney who acts as co-counsel from another attorney in a separate firm who himself possessed only imputed knowledge would result in unnecessary disqualifications. A "reasonable possibility" of impropriety must exist to necessitate disqualification under the appearance of impropriety standard. *Norton v. Tallahassee Memorial Hospital,* 689 F.2d 938, 941 (11th Cir.1982). Imputing knowledge that is itself imputed does not constitute a "reasonable possibility."

Accordingly, Defendant N.T.J.C.'s Opposition to Magistrate's Report and Recommendation (Doc. No. 57, filed July 21, 1997) is **OVERRULED,** and the Report and Recommendation is **APPROVED** and **ADOPTED.**

### CONCLUSION

1) Defendant N.T.J.C.'s Motion for Leave to File Reply to Plaintiff's Response to Opposition to Magistrate's Report and Recommendation (Doc. No. 60, filed August 20, 1997) is DENIED. 2) Defendant N.T.J.C.'s Opposition to Magistrate's Report and Recommendation (Doc. No. 57, filed July 21, 1997) is OVERRULED, and the Report and Recommendation is APPROVED and ADOPTED by the Court.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on June 6, 1997 on the following memorandum of law,[1] treated as a motion:

**MOTION:** **MEMORANDUM OF LAW IN SUPPORT OF N.T.J.C., INC.'S MOTION TO DISQUALIFY AND FOR PROTECTIVE ORDER** [Docket No. 42]

**FILED:** May 9, 1997

**RECOMMENDATION:** For the reasons set forth below, it is respectfully submitted that the motion to disqualify the firm of Sobering, White & Luczak, P.A. and for a protective order be DENIED.

N.T.J.C., Inc. d/b/a Dura–Craft Homes [hereinafter "N.T.J.C."] paid Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. [hereinafter "Allen, Dyer, Doppelt"] for legal advice and representation in connection with this very lawsuit, and N.T.J.C.'s president, Joseph Nehmahtallah, freely and confidentially discussed the underlying facts and N.T.J.C.'s early litigation strategy with Allen, Dyer, Doppelt. When Allen, Dyer, Doppelt then appeared[2] on behalf of N.T.J.C.'s *opponent* in this litigation, Baybrook, N .T.J.C. filed the above motion to disqualify. To the extent that N.T.J.C.'s motion seeks to compel

---

1. On April 16, 1997, this Court struck N.T.J.C., Inc.'s motion to disqualify and for protective order for failure to comply with the twenty page limit set forth in Local Rule 3.01(c). *See* Docket No. 33. Only the memorandum of law in support of the motion to disqualify and for a protective order remains. Nevertheless, the parties have fully briefed and narrowed the disqualification issue for consideration. *See* Docket Nos. 42, 45, 49. Additionally, Baybrook filed its memorandum in opposition on May 22, 1997. *See* Docket No. 45. Finally, the parties have filed a joint stipulation of facts regarding the issue of disqualification. *See* Docket No. 49. Having

conducted a hearing, the issue is ripe for determination. Accordingly, the Court treats the memorandum of law in support of N.T.J.C., Inc.'s motion as a motion to disqualify counsel for Baybrook and for a protective order.

2. Herbert Allen, Esq. of Allen, Dyer, Doppelt generally appeared pursuant to Local Rule 2.03. The Local Rules contemplate appearances by lawyers, not law firms. *See* Local Rules 2.01–2.14. This introduction refers to the appearance of firms only for the sake of simplicity of presentation.

the disqualification of Allen, Dyer, Doppelt, the motion is moot because Allen, Dyer, Doppelt has voluntarily withdrawn.

But N.T.J.C. also moves to force the withdrawal of Baybrook's lead counsel, Sobering, White & Luczak, P.A. [hereinafter "Sobering, White"]. N.T.J.C. believes that Allen, Dyer, Doppelt may have betrayed its confidence by unintentionally passing on facts and strategy to Sobering, White as the two law firms jointly advised Baybrook on how to defeat N.T.J.C. in this case. N.T.J.C. argues that there is an appearance of impropriety in Sobering, White's continued representation of Baybrook after Sobering, White associated as co-counsel with N.T.J.C.'s lawyers, Allen, Dyer, Doppelt. *See* Docket No. 42 at 5 n. 1.

## I. THE LAW

### A. Rules Regulating the Florida Bar

The Model Rules of Professional Conduct of the American Bar Association (as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of the Florida Bar) govern the professional conduct of members of the bar of the United States District Court for the Middle District of Florida. Local Rule 2.04(c) (1988). The Rules Regulating the Florida Bar (also known as the Florida Rules of Professional Conduct) replaced the Florida Code of Professional Responsibility as of January 1, 1987. *See The Florida Bar Re Rules Regulating the Fla. Bar,* 494 So.2d 977 (Fla.), *opinion corrected by* 507 So.2d 1366 (Fla.1986). Although highly persuasive, the decisions of the Supreme Court of Florida are not binding upon the United States District Court for the Middle District of Florida in interpreting the Rules Regulating the Florida Bar because "this court must retain the right to interpret and apply the rules in a federal setting." *See In re Disciplinary Proceedings of John Doe,* 876 F.Supp. 265, 269 n. 5 (M.D.Fla.1993).

Rule 4–1.9 of the Rules Regulating the Florida Bar governs disqualification for conflicts of interest with a former client. Rule 4–1.9 provides that:

[a] lawyer *who has formerly represented a client in a matter* shall not thereafter:

(a) represent another person in the same or a substantially related matter in

which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as rule 4–1.6 would permit with respect to a client or when the information has become generally known.

*See* Rules Regulating the Florida Bar, Rule 4–1.9 (emphasis added). In order to prevail in a motion to disqualify under Rule 4–1.9, the movant must establish: 1.) the existence of a prior attorney/client relationship with the movant; and 2.) that the matters in the pending suit are substantially related to the previous matter or cause of action. *See McPartland v. ISI Investment Services, Inc.,* 890 F.Supp. 1029, 1031 (M.D.Fla.1995) (citing *Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 728 (11th Cir.1988)). Where there is an attorney-client relationship, the law creates an irrebuttable presumption that confidences have been disclosed between the attorney and the client. *See State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So.2d 630, 633–34 (Fla.1991). The presumption is irrebuttable because it is difficult to establish that confidences were actually disclosed to an opponent, and because such a situation is "rife with the possibility of discredit to the bar and the administration of justice." *Id.* at 634 (citing *Rotante v. Lawrence Hosp.,* 46 A.D.2d 199, 200, 361 N.Y.S.2d 372, 373 (1974)).

Where a lawyer is disqualified pursuant to Rule 4–1.9, Rule 4–1.10 operates to impute the disqualification to all lawyers *associating with that disqualified attorney in a firm.* Specifically, Rule 4–1.10(a) provides:

[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4–1.7, 4–1.8(c), 4–1.9, or 4–2.2.

Rule 4–1.10 is limited to situations in which counsel associate *in a firm,* and does not apply between separate firms. *See* Rules Regulating the Florida Bar, Rule 4–1.10 comment. N.T.J.C. does not direct the Court to—and the Court has not discovered—any decisional authority applying Rule 4–1.10 between two firms. *See* Docket No. 42.

■ No party disputes that Doppelt and Allen are disqualified from representing Baybrook in this action. *See* Docket Nos. 42 at 5, 45 at 7. Nehmahtallah, on behalf of N.T.J.C., consulted Doppelt for the purpose of securing legal advice regarding the complaint in this action. *See* Docket Nos. 49 at 1, 50. Nehmahtallah paid Allen, Dyer, Doppelt $190 in legal fees. *See* Docket No. 50 at 2–3. Were Doppelt to represent Baybrook in this action, she would effectively be switching sides in contravention of Rule 4–1.9. *See* Rules Regulating the Florida Bar, Rule 4–1.9 comment. Accordingly, Rule 4–1.9 precludes Doppelt from representing Baybrook.

Because Doppelt's prior relationship with Nehmahtallah precludes her from representing Baybrook pursuant to Rule 4–1.9, Rule 4–1.10 imputes her disqualification to the entire Allen, Dyer, Doppelt firm. Rule 4–1.10(a) precludes a lawyer from knowingly representing a client when an associated lawyer in the firm would be precluded from doing so under, *inter alia,* Rule 4–1.9. Rule 4–1.10 imputes the knowledge held by an attorney to all members associated with the firm. Therefore, no member of Allen, Dyer, Doppelt may represent Baybrook in this action.[3]

### B. Avoiding the Appearance of Impropriety Under the Florida Rules

Before the Rules of Regulating the Florida Bar became effective on January 1, 1987, the earlier Code of Professional Responsibility had contained an express requirement that attorneys conduct themselves in a manner that avoids even the appearance of impropriety. In considering whether to impute disqualification between firms, the courts would decide whether the disqualification was necessary to avoid the appearance of impropriety. *See American Can Co. v. Citrus Feed. Co.,* 436 F.2d 1125, 1129 (5th Cir. 1971);[4] *Smith v. Whatcott,* 774 F.2d 1032, 1034–35 (10th Cir.1985);[5] *Akerly v. Red*

*Barn System, Inc.,* 551 F.2d 539, 543–45 (3d Cir.1977). The Supreme Court of Florida removed the express requirement to avoid the appearance of impropriety when it modified the Rules Regulating the Florida Bar effective January 1, 1987.

As written, the Rules Regulating the Florida Bar now contain no express requirement that attorneys avoid even the appearance of impropriety. Nevertheless, according to the Supreme Court of Florida and the United States District Court for the Middle District of Florida, Florida law retains a requirement to avoid even the appearance of impropriety. *See State Farm Mut. Auto. Ins. Co. v. K .A.W.,* 575 So.2d 630, 633 (Fla.1991); *McPartland v. ISI Investment Serv., Inc.,* 890 F.Supp. 1029, 1030–31 (M.D.Fla.1995); *Brotherhood Mut. Ins. Co. v. National Presto Ind., Inc.,* 846 F.Supp. 57, 58–59 (M.D.Fla. 1994). In considering whether to impute disqualification between firms, therefore, this Court may consider whether the disqualification is necessary to avoid the appearance of impropriety and to protect against disclosure of confidences. *See McPartland v. ISI Investment Serv., Inc.,* 890 F.Supp. 1029, 1030–31 (M.D.Fla.1995); *State Farm,* 575 So.2d at 633–34.

### C. The Standard for Imputing Disqualification Between Firms

■ As a general rule, the courts do not impute the disqualification of a person in one firm to a person in another firm, even where members of the two firms are working together, so long as there is "only a small actual risk of confidential client information spreading from the primarily-conflicted lawyer to the second firm." *See Restatement (Third) of the Law Governing, Lawyers* § 203 comment (c)(iii) (Proposed Final Draft No. 1, 1996); *see also Akerly v. Red Barn System, Inc.,* 551 F.2d 539 (3d Cir.1977) (refusing to impute disqualification between

---

3. Herbert Allen, Esq. of Allen, Dyer, Doppelt withdrew as counsel for Baybrook upon becoming aware of the conflict. *See* Docket No. 48 at 3.

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit

prior to the close of business day on September 30, 1981.

5. The *Smith* decision does not clarify whether it is applying the new Rules or the old Code. In fact, *Smith* does not even address the issue, but rather determined that disqualification was not necessary to protect against the appearance of impropriety. *See* 774 F.2d at 1035.

firms because peripheral role of disqualified local counsel made risk of abuse of confidences low); *Realco Services, Inc. v. Holt*, 479 F.Supp. 867 (E.D.Pa.1979) (refusing to impute disqualification to local counsel because local counsel had no access to confidences which disqualified principal counsel, even though local counsel's role included preparing discovery motions and filing pleadings).

The general rule applies as well in the Eleventh Circuit. In *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971), the Honorable Ben Krentzman erroneously imputed withdrawn Tampa counsel's knowledge of defendants' tax matters to Covington & Burling, an independent firm acting as lead counsel for the plaintiff. Judge Krentzman reasoned that public policy regarding the appearance of impropriety required the Court to impute knowledge about the defendants' tax files and records not only from a tax partner (who had advised defendants) to a litigation partner in the same Tampa firm, but then also from the litigation counsel in the Tampa firm [6] to the lead litigation counsel at Covington & Burling, a separate firm. 436 F.2d at 1127. The Court of Appeals rejected Judge Krentzman's public policy rationale and reversed the order disqualifying Covington & Burling. The Court of Appeals reasoned that Covington & Burling and its members were neither partners of, nor associated with, local counsel. Furthermore, the re-imputation of local counsels' imputed knowledge to a firm which is separately responsible and separately compensated would be an unwise "drastic" measure that would "set a disturbing precedent" that could lead to "extreme results." 436 F.2d at 1129.

■ A movant need not establish that a firm subject to disqualification disclosed actual confidences. *See e.g., American Can*, 436 F.2d at 1129. The movant, however, must do something more than merely assert that the two firms associated themselves as co-counsel, or that the firm subject to disqualification had potential access to confidential records.[7] A Court reviewing inter-firm imputation must conduct a case-by-case analysis of the facts. *See American Can*, 436 F.2d 1125; *see also Smith v. Whatcott*, 774 F.2d 1032; *The Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977).[8] The fact that two firms have associated as co-counsel does not itself establish that their relationship is so close as to impute disqualification. *See, e.g., Smith*, 774 F.2d at 1034–35; *Fund of Funds*, 567 F.2d at 235–36, *American Can*, 436 F.2d at 1128–30.

■ In summary, a court will impute disqualification between independent firms only where there is more than a small actual risk of confidential information spreading from the primarily-conflicted attorney to the associating firm. *See Restatement (Third) of the Law Governing Lawyers* § 203 comment (c)(iii) (Proposed Final Draft No. 1, 1996). Disqualification is not imputed on a public-policy rationale—i.e., *potential access* to confidential information held by the primarily-conflicted attorney is insufficient. *See American Can*, 436 F.2d at 1129–30.

## II. APPLICATION

In order to establish the propriety of disqualifying Sobering, White, N.T.J.C. must prove either: 1.) that the Court should impute Allen, Dyer, Doppelt's knowledge of N.T.J.C.'s confidences to Sobering, White so as to avoid an appearance of impropriety; or 2.) that, for the purpose of the instant litigation, Allen, Dyer, Doppelt and Sobering, White were "associated in a firm" within the meaning of Rules Regulating the Florida Bar, Rule 4–1. 10. N.T.J.C. has proved neither.

---

**6.** The Tampa litigation partner could have known the content of the tax files, but defendants were not sure what he did know. 436 F.2d at 1127. The Tampa litigation partner voluntarily withdrew as local counsel. *Id.*

**7.** In the two major cases raising inter-firm disqualification issues, the courts of appeal determined that the firms subject to disqualification had learned actual confidences, and therefore did not address the question of inter-firm imputation. *See Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 730 n. 8 (11th Cir.1988); *The Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233 n. 15 (2d Cir.1977).

**8.** Both *American Can* and *Fund of Funds* applied rules governing professional conduct that incorporated an express requirement to avoid the appearance of impropriety.

## A. Appearance of Impropriety

N.T.J.C.'s primary argument is that the Court must disqualify White and all attorneys associated with Sobering, White to protect against the appearance of impropriety. *See* Docket No. 42 at 5 n. 1. Specifically, N.T.J.C. argues that Sobering, White's access to confidential information held by Allen, Dyer, Doppelt mandates disqualification. *See* Docket No. 42.[9] Nehmahtallah certifies that he cannot be "assured that the totality of [his] conversations with Ms. Doppelt have not been provided not only to Herbert Allen, but also to his co-counsel Robert White, as well as Braxton Green (the Plaintiff)." *See* Docket No. 38 at 4. While the Court understands Nehmahtallah's concern, that concern alone is insufficient under the law governing the conduct of attorneys to mandate disqualification of both Allen *and* White.

■ Where courts have imputed disqualification inter-firm, they have tended to do so by assuming or concluding that an attorney directly involved in the litigation has *actual knowledge* of the confidences. *See Cox,* 847 F.2d at 730 n. 8; *Fund of Funds,* 567 F.2d at 233 n. 15. While courts generally recognize that it may be *possible* to impute disqualification between two independent firms under the appearance of impropriety standard, *see Smith,* 774 F.2d at 1035; *Akerly,* 551 F.2d at 544–45; *American Can,* 436 F.2d at 1129–30, N.T.J.C. has not directed this Court to, nor has this Court discovered any case imputing an imputed disqualification between separate firms.

■ This action involves an alleged violation of copyrights in house floor plans, Ava Doppelt, Esq., a partner at Allen, Dyer, Doppelt, initially advised Nehmahtallah on legal matters involving this very copyright lawsuit. Nehmahtallah sought legal representation from Doppelt shortly after being served with a copy of the complaint, and left his file with Doppelt for her review. *See* Docket No. 38

at 2. Doppelt informed Nehmahtallah that Allen, Dyer, Doppelt would have to inquire into potential conflicts prior to accepting him as a client, and advised Nehmahtallah that his insurance policy might cover the defense costs. *See* Docket No. 38 at 2 – 3. While the insurance policy covered defense costs, the insurer selected the Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A. to defend N .T.J.C. rather than Allen, Dyer, Doppelt. *See* Docket No. 38 at 4. Accordingly, Nehmahtallah recovered his file from Doppelt and began consulting with the Wicker firm. *Id.* Nehmahtallah paid Allen, Dyer, Doppelt $190 in legal fees. *See* Docket No. 50 at 2 – 3.

On January 23, 1997, White telephoned Allen, Doppelt's partner, to determine whether Allen was interested in consulting in this litigation. Five days later, Allen telephoned White and provided a case citation as Allen had promised. On February 5, 1997, Allen, White, and Braxton Green met to discuss the substantive details of this case. The meeting lasted approximately one and one-half hours. The lawyers discussed the chain of copyrights and the manner in which the floor plans had been used in commerce—the underpinnings of Baybrook's claims. During the meeting, Allen telephoned his partners to determine whether his firm had previously represented N.T.J.C. After speaking with his partners, Allen believed that no conflict existed. After the meeting, Allen sent Baybrook his firm's standard engagement letter, and Baybrook engaged Allen, Dyer, Doppelt as its co-counsel. During the time that White and Green were present in the offices of Allen, Dyer, Doppelt, they had no access to any of Allen, Dyer, Doppelt's confidential files or information. Allen therefore spent less than two hours attending to this case.

Allen filed his appearance as co-counsel for Baybrook on February 7, 1997. N.T.J.C. filed a motion to disqualify on April 15, 1997.

---

9. N.T.J.C.'s legal argument is extremely difficult to follow. The memorandum of law begins with a general introduction, moves into the standard (section A), and then offers its argument under Part 11 (there is no Part I). *See* Docket No. 42 at 4. Later, without a section A to Part II, N.T.J.C. presents section B. *See* Docket No. 42 at 12. This organizational scheme renders it very difficult to discern the steps N.T.J.C. follows to arrive

at the conclusion that mere access to confidential information because of a co-counsel relationship is sufficient to warrant disqualification under the Rules Regulating the Florida Bar. This is especially true in light of the fact that N.T.J.C.'s argument flows between cases addressing intra-firm disqualification and cases addressing inter-firm disqualification.

*See* Docket No. 31. Three days later at a preliminary pretrial conference, Allen filed a motion to withdraw, which the Court granted. *See* Docket Nos. 34, 35, 36.

Under these facts, there is no more than a minimal risk of disclosure of actual confidences in the collaboration between Allen and White. *See Restatement (Third) of the Law Governing Lawyers* § 203 (Proposed Final Draft No. 1, 1996). Doppelt never communicated any of the confidential information that Nehmahtallah divulged to her to either Allen or White. Allen and Doppelt never had any discussions concerning Doppelt's conversations with Nehmahtallah. Doppelt never communicated any confidential information to Allen concerning this case. Neither Allen nor Doppelt ever gave White any confidential information, attorney-client communications, or factual information of any nature concerning N.T.J.C.

The collaboration in this case between Allen and White was sufficiently minimal that there is little or no risk that confidential information has flowed from Doppelt through Allen to White. Doppelt returned Nehmahtallah's file well before Allen and White ever discussed this action, therefore there is no possibility that White may have had access to Nehmahtallah's confidential papers. Doppelt, Allen, and White have all certified that no confidences have been disclosed. Indeed, Allen first became aware of the conflict on April 15, 1997, and he withdrew as counsel for Baybrook on April 18, 1997. In light of these facts, disqualification of White is unnecessary. *See American Can*, 436 F.2d at 1129.

N.T.J.C. asks this Court to adopt a position similar to that of Judge Krentzman in *American Can*. N.T.J.C. argues that White's "access" to confidential information mandates disqualification.[10] *See* Docket No. 42 at 12. N.T.J.C. does not allege that any actual disclosure has occurred, or that the parties have

not acted in good faith. *See* Docket No. 42 at 5 n. 1.

N.T.J.C. argues that *American Can* is distinguishable on its facts—because American Can hired and selected the firms, and because of the lack of a substantial relation between the confidential disclosures. *See* Docket No. 42 at 7 – 9. In fact, Judge Krentzman relied on very similar facts in *American Can* when he applied his theory of imputation. *See* 436 F.2d at 1127. Even if it was American Can (the client) that selected local Tampa counsel as suggested, and not Covington & Burling, the difference is hardly significant in light of *American Can*'s strong disapproval of imputation based on an imputation. *See American Can*, 436 F.2d at 1127–30. Although Judge Krentzman made no finding that the details of the defendants' confidential tax problems were substantially related to American Can's suit, the tax confidences there appear to be at least as sensitive as the house plan confidences shared by Nehmahtallah in this case. Applying *American Can*, White's disqualification is not necessary to protect against the appearance of impropriety.

## B. Allen, Dyer, Doppelt and Sobering, White as "Associated in a Firm"

■ Alternatively, N.T.J.C. argues that Allen, Dyer, Doppelt and Sobering, White must be considered a single "firm" under Rule 4–1.10, and therefore Doppelt's disqualification must be imputed to White and all members of Sobering, White.[11]

Unless Allen, Dyer, Doppelt and Sobering, White are considered a single "firm" for this action, Doppelt's disqualification cannot be imputed from Doppelt to Sobering, White under Rule 4–1.10. *See* Rules Regulating the Florida Bar, Rule 4–1.10(a). Chapter 4 of the Rules of Professional Conduct defines

---

**10.** N.T.J.C. has barely proved the possibility of potential access to confidential information, much less actual access to confidential information. If White had actual access to confidential information, then the result would be very different.

**11.** At no point does N.T.J.C. expressly argue that Allen, Dyer, Doppelt and Sobering, White should be considered a single firm for the purposes of

Rule 4–1.10. *See* Docket No. 43. Yet, N.T.J.C. has at least implicitly raised this issue through its Notice of Supplemental Authority. *See* Docket No. 53. In its Notice of Supplemental Authority, N.T.J.C. directs the Court to *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 n. 2 (Fla.App. 1st Dist.1995), in which the Court termed two firms a single firm for purposes of Rule 4–1.10. *Zarco* is distinguishable for the reasons set forth below.

"firm" or "law firm" as "a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization and lawyers employed in a legal services organization." Rules Regulating the Florida Bar, Chapter Four, preamble. The Preamble definition specifically refers to the Comments to Rule 4–1.10 which provide, *inter alia,* that

> whether 2 or more lawyers constitute a firm within this definition can depend on the specific facts. For example, if 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules.

*See* Rule Regulating the Florida Bar, Rule 4–1.10 comment. Relevant factors to determining whether particular individuals should be regarded as part of a "firm" include: 1.) the terms of any formal agreement between associated lawyers; 2.) whether the individuals have mutual access to confidential information concerning the client they serve; and 3.) in close cases, the underlying purpose of the rule. *Id.* Furthermore, the comments note that a *"group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another." Id.* (emphasis added).

Allen, Dyer, Doppelt and Sobering, White are not a single "firm" within the meaning of Rule 4–1.10. The record indicates no written or oral agreement between Allen and White. White did not have access to any confidential information held by Allen, and neither the two lawyers nor the two firms had previously associated together in representing a single client. *See* Docket Nos. 47 at 2, 48 at 3. Furthermore, the two firms do not share office space or present themselves in such a manner that they should be regarded as a firm. *Id.* Rule 4–1.10 notes that a group of lawyers could be regarded as a firm for the purpose of the prohibition against representing opposing parties, and the same group might not be so regarded for purposes of imputation. *See* Rules Regulating the Florida Bar, Rule 4–1.10 comment. Accordingly, Sobering, White and Allen, Dyer, Doppelt are not a single firm subject to imputation of disqualification under Rule 4–1.10.

Baybrook argues that Allen, Dyer, Doppelt and Sobering, White should be considered a single "firm" under the reasoning of *Zarco Supply Co. v. Bonnell,* 658 So.2d 151 (Fla. App. 1st Dist.1995). *See* Docket No, 53. In *Zarco,* the attorneys collaborated in drafting the complaint. The Court determined that it was "illogical to assume that the two firms have not exchanged confidential information." *See* 658 So.2d at 154 n. 2 (applying 4–1.10(b)). Further, the conflict was fully disclosed to the represented party, who then waived the conflict. *Zarco,* 658 So.2d at 153. Therefore, the collaborating attorneys were aware of the conflict at the time of collaboration.

*Zarco* does not require the Court to view Allen and White as associated in a single "firm" and thus subject to imputation under Rule 4–1.10. White and Allen have not collaborated in such a manner that White would have access to confidential information held by Allen. White and Allen worked together for less than two hours. Their conversations were generally limited to a particular case citation, the chain of copyrights, and the manner in which the floor plans had been used in commerce. Further, White, Allen, and Doppelt have certified that they have neither exchanged confidential information nor provided access to confidential documents. *See* Docket Nos. 46, 47, 48. In fact, Nehmahtallah had recovered his file prior to the collaboration, therefore there is no danger that the parties may have had access to confidential documents. *See* Docket No. 38 at 3 – 4. Therefore, White and Allen are in a very different posture than the collaborating attorneys in *Zarco,* and it is not logical to assume that the two have exchanged confidential information which would require considering them to be associated in a single "firm." *See Zarco,* 658 So.2d at 154 n. 2.

## III. CONCLUSION

For the reasons set forth above, it is RECOMMENDED that the motion to disqualify

and for a protective order be DENIED. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.