HOUSTON, Justice.
This factually complex case presents issues concerning the imputation of knowledge between law firms acting in a cocoun-sel relationship.
At various times in 1997, two Alabama attorneys — Tom Campbell and Scott Simpson — filed in the Jefferson Circuit Court three different class actions against various termite companies, one of which was Terminix International Company, L.P. (“Terminix”). The complaints were substantially the same, each alleging that the termite companies had failed to perform annual inspections as required under Ala. *1093 Code 1975, § 2-28-9. When they filed these actions, Campbell and Simpson were members of the Birmingham law firm of Lange, Simpson, Robinson & Somerville (“Lange Simpson”). In August 1997, however, Campbell left Lange Simpson and joined the law firm of Ogletree, Deakins, Nash, Smoak & Stewart (“Ogletree”), which had opened an office in Birmingham. Terminix, which was one of Ogletree’s clients, had been represented in Georgia for a number of years by Jay Barber, an attorney in Ogletree’s Atlanta office. After discovering that Ogletree represented Terminix, and before joining the Ogletree firm, Campbell withdrew from the Termi-nix case. Lange Simpson referred the Terminix case and the two other cases Campbell and Simpson had filed to the Birmingham law firm of Ritchie & Rediker. Scott Simpson left Lange Simpson and joined Ritchie & Rediker at about the same time Campbell joined Ogletree. Simpson continued to work on the Termi-nix case and the other termite cases once he joined Ritchie & Rediker.
Although he was no longer involved with the Terminix case, Campbell remained as plaintiffs’ counsel in the two other cases he and Simpson had filed against termite companies. Campbell, Simpson, and other attorneys associated with Ritchie & Rediker then filed class actions , against six additional termite companies. All of the complaints filed against the termite companies, including the complaint filed against Ter-minix, make the same allegations and deal with substantially the same legal issues. Because of the similarities of the actions, Terminix requested, through extended correspondence, that Ogletree withdraw from the termite cases. Ogletree refused, taking the position that it had no conflict of interest because it was not involved in Ritchie & Rediker’s case against Terminix.
In December 1997, Terminix filed a motion in the Jefferson Circuit Court to disqualify Ritchie & Rediker from prosecuting the action against it. Terminix also filed an action against Ogletree in a Tennessee state court, which Ogletree removed to the United States District Court for the Western District of Tennessee, seeking to disqualify Ogletree from prosecuting any of the actions against the other termite companies. After a hearing on Terminix’s motion for a preliminary injunction, the federal district court found that Ogletree had breached a fiduciary duty owed to Terminix by continuing to participate in the other class actions, because, it concluded, any strategies, legal research, or legal theories that Ogletree might use or pursue in the other actions would necessarily be used by Ritchie & Rediker against Terminix. However, the district court chose to delay ruling on the request for the preliminary injunction until the Jefferson Circuit Court had ruled on Terminix’s motion to disqualify Ritchie & Rediker. Immediately after the federal district court indicated it would delay ruling on the request for the preliminary injunction, Ogletree and Ritchie & Rediker severed their cocounsel relationship in all of the termite cases. The Jefferson Circuit Court appointed a special master, who, after conducting a hearing, recommended that Terminix’s motion to disqualify Rit-chie & Rediker be denied. The special master found that no confidential information had been exchanged between Ogletree and Ritchie & Rediker. Having already denied Terminix’s requests for further discovery, the circuit court adopted the special master’s report and denied Terminix’s motion to disqualify. Terminix then filed this petition for a writ of mandamus.
Terminix seeks a writ of mandamus directing the circuit court to either 1) disqualify Ritchie & Rediker, based on violations of Rules 1.10(a) and 8.4(a) of the Alabama Rules of Professional Conduct, or 2) allow further discovery to determine if confidential information was, in fact, passed between Ogletree and Ritchie & Rediker. This Court has said that “mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order *1094 sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989) (citing Barber v. Covington County Comm’n, 466 So.2d 945 (Ala.1985)); see also Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala.1993) (stating that mandamus is “an extraordinary remedy that will not be issued unless the [petitioner] has a clear, undisputable right to the relief sought”). The question, then, is whether Terminix has a “clear legal right” to have Ritchie & Rediker disqualified or to engage in additional discovery; if so, then the circuit court’s denial of these requests constituted an abuse of discretion. See Ex parte Life Ins. Co. of Georgia, 663 So.2d 929, 931 (Ala.1995). We conclude that Terminix has demonstrated no clear legal right to the relief it requested of the circuit court and, therefore, that it is not entitled to the writ of mandamus.

Rule 1.10(a)

Terminix argues that Ritchie & Re-diker should be disqualified under Rule 1.10(a), Ala. R. Prof. Conduct, which, Ter-minix argues, requires the disqualification of all members of a firm if any one of them alone would be disqualified. In other words, Terminix contends that the close relationship that existed between Ogletree and Ritchie & Rediker, combined with the similarities between the Terminix action (handled by Ritchie & Rediker only) and the other class actions against termite companies (which for a while were handled by both firms), should compel this Court to view the activities of Ogletree and Ritchie & Rediker as those of a single firm. Also, Terminix argues that if Ritchie & Rediker is not disqualified under either Rule 1.10(a) or Rule 8.4(a), there will be an “appearance of impropriety.”
Rule 1.10(a) provides:
“While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.”
The comment to this rule states, in part, that, “[f]or purposes of the Rules of Professional Conduct, the term ‘firm’ includes lawyers in a private firm, and lawyers employed in the legal department of a corporation or other organization, or in a legal services organization.” See the definition of “firm” or “law firm” under the “Terminology” section of the Rules of Professional Conduct. Nothing in Rule 1.10(a) or in the comment to the rule suggests that attorneys employed by different firms working together in a cocounsel relationship constitute a “firm” within the meaning of 1.10(a). We must conclude, therefore, that whatever confidential information concerning Terminix would be imputed to Campbell by virtue of his employment with Ogletree cannot be further imputed to Simpson under paragraph (a) of Rule 1.10 so as to disqualify Simpson and Ritchie & Rediker from prosecuting an action for their client against Terminix.
In concluding that Ogletree and Ritchie & Rediker’s eocounsel relationship did not mean that they constituted a “firm” within the meaning of Rule 1.10(a), the special master relied on an opinion the Alabama State Bar Association had given to Ritchie & Rediker in response to that firm’s inquiry concerning the possible ethical implications of its association with Ogletree. Concerning the opinion, the special master wrote:
“The Bar specifically opined that where a cocounsel relationship exists, they are not to be considered a firm for the purposes of Rule 1.10 and that any presumption of shared confidence between members of the same firm does not extend to lawyers in a cocounsel relationship. The Bar went further to say that the disqualification of a lawyer or firm would only be appropriate when confidential information has actually been disclosed between cocounsel. Such is not the case here. As has been previ *1095 ously found, there has been no disclosure of any confidential information of Terminix in this case and imputed disqualification is therefore not required under Rule 1.10.
“In this case, the question is whether Ritchie & Rediker and Ogletree constitute a ‘firm’ under the facts of this case. In the absence of clear evidence of improper sharing of Terminix’s confidential information by Ogletree or of Ogletree’s improper direct participation in [the action against Terminix], Ogletree and Rit-chie & Rediker cannot be considered to be one ‘firm’ for the purpose of applying Rule 1.10.”
Report of the special master at Bl.
It is appropriate here to require proof of actual disclosure of confidential information as a prerequisite to disqualifying counsel, because Ogletree never was involved as cocounsel with Ritchie & Rediker in the Terminix action. If a showing of actual disclosure was not required, then disqualification could arguably be based on a “double imputation” theory (imputing information from a firm to a member of that firm and then to a member of another firm acting as cocounsel), a theory that has been heavily criticized by other courts. See Essex Chemical Corp. v. Hartford Acc. & Indem. Co., 993 F.Supp. 241, 251 (D.N.J.1998) (discussing cases from several federal courts that have rejected the theory of double imputation); Baybrook Homes, Inc. v. Banyan Constr. Dev. Inc., 991 F.Supp. 1440, 1445-46 (M.D.Fla.1997).
We also note that requiring proof of actual disclosure of confidential information is consistent with paragraphs (b) and (c) of Rule 1.10, which operate to preserve client loyalty by protecting client confidentiality and creating an obligation on the part of an attorney to decline subsequent representations involving positions adverse to a former client and arising in substantially related matters. Ogletree (which does possess confidential information pertaining to Terminix) is not involved in an action against Terminix. Ogletree obtained its confidential information concerning Terminix through an attorney in its Atlanta office, not through Campbell. Campbell has never represented Terminix. Likewise, neither Simpson nor any other attorney employed by Ritchie & Rediker has ever represented Terminix. Terminix seeks to disqualify Ritchie & Rediker by imputing confidential information from Ogletree to Ritchie & Rediker. According to Terminix, Ogletree’s previous cocounsel relationship with Ritchie & Rediker in the actions against other termite companies requires that Ogletree’s confidential information concerning Terminix be imputed to Ritchie & Rediker as a matter of law. For these reasons, Terminix does not contend that paragraphs (b) and (c) of Rule 1.10 apply to the facts of the present case; however, the comment to Rule 1.10 pertaining to these paragraphs does shed light on the central issue raised by Termi-nix — whether confidential information must be imputed from Ogletree to Ritchie & Rediker as a matter of law by virtue of their previous cocounsel relationship in actions against other termite companies or whether a factual question is presented as to whether confidential information passed from Ogletree to Ritchie & Rediker. The comment states:
“The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety proscribed in Canon 9 of the ABA former Code of Professional Responsibility. This rubric has a twofold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since ‘impropriety’ is undefined, the term ‘appearance of impropriety is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a *1096 lawyer practicing alone or by the very general concept of appearance of impropriety.
“A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.”
The comment goes on to state that paragraphs (b) and (c) of Rule 1.10 operate to disqualify a firm only when the lawyer involved has actual knowledge of information protected by the Rules of Professional Conduct. Therefore, based on the discussion set out above, we conclude that Rule 1.10 does not contemplate imputed disqualification as a matter of law outside the context of attorneys associated together in a firm.

Rule 84(a)

Terminix also contends that Ritchie & Rediker should be disqualified under Rule 8.4(a), which states that it is “professional misconduct” for an attorney to “violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.” Terminix argues that Ogletree breached a fiduciary duty to Terminix by participating with Ritchie & Rediker in the other class actions against termite companies and that, because Rit-chie & Rediker knew that Terminix was a client of Ogletree’s, Ritchie & Rediker “knowingly assisted” Ogletree in breaching its duty to Terminix. As support for this claim, Terminix cites Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225 (2d Cir.1977), which Terminix maintains is factually similar to this case. However, Fund of Funds involved a firm, Morgan Lewis, that had been directly involved in the investigation of a case against its own client, Arthur Andersen & Company. 567 F.2d at 234. Morgan Lewis tried to, in a sense, delegate that case to an outside attorney, Meister, who knew of Morgan Lewis’s ethical predicament. Id. The United States Court of Appeals for the Second Circuit stated, “[Meister’s] retention as counsel was premised on and resulted from the Morgan firm’s incapacity to pursue the claim itself. Armed with that knowledge, and aided in some degree by Morgan Lewis [specifically in the case against Arthur Andersen], Meister should not have accepted the retainer.” Id.
This short analysis of Fund of Funds is all that is necessary to distinguish it from this case. Here, Ogletree never had any such involvement with the case against Terminix. Campbell, along with Simpson, had initiated the Terminix action, but Campbell withdrew from it and Lange Simpson referred it to Ritchie & Rediker before Campbell joined Ogletree. Ogle-tree, therefore, was not in any position to “delegate” the Terminix case to anyone, because it had no control over that case. Also, in Fund of Funds, Meister had actual knowledge not only of Morgan Lewis’s ethical dilemma, but of the reason Morgan Lewis had attempted to get Meister to pursue the case — Morgan Lewis’s inability to pursue the case on its own. In this present case, no evidence indicates that Ritchie & Rediker knew of such an ethical problem when it accepted the Terminix case. There is also no evidence that, even later — when Ritchie & Rediker was informed by Terminix of possible ethical problems with the cocounsel relationship with Ogletree — Ogletree had disclosed confidential information to Ritchie & Re-diker or had served as cocounsel in the Terminix case. Therefore, it is difficult to see how Ritchie & Rediker could be found to have “knowingly assisted” Ogletree in violating a duty to Terminix, especially in light of Ritchie & Rediker’s solicitation of an opinion from the State Bar as to the ethical ramifications of its cocounsel relationship with Ogletree and in light of the prompt action it took following the Tennessee federal court’s indication that it should sever its cocounsel relationship with Ogle-tree. The circuit court did not abuse its discretion in finding no such assistance.

*1097
Additional Discovery

Terminix’s final argument is that if proof of actual disclosure of confidential information is required in order to have Ritchie & Rediker disqualified, then Ter-minix should be allowed to conduct further discovery, especially to exploit certain conflicts that Terminix says exist in the testimony. During the proceedings before the special master, the parties agreed, at least in the initial stages, to conduct discovery by methods other than by taking depositions. As it turned out, neither side had the opportunity to cross-examine or to be present during the giving of testimony. The special master heard live testimony from only one witness, Bart Mallory, who was Terminix’s general counsel. Beyond this testimony, the special master relied on the affidavits of the attorneys with the Ritchie & Rediker firm, as well as the depositions, taken in the federal action in Tennessee, of Ogletree attorneys Tom Campbell and Jay Barber. Although Ter-minix apparently asked, throughout the proceedings, for additional discovery, the special master found that the evidence before him adequately addressed the question whether any confidential information had passed between Ogletree and Ritchie & Rediker. The question for this Court, then, is whether Terminix has a “clear legal right” to additional discovery; if so, then the circuit court abused its discretion in denying that discovery.
Terminix contends that there were conflicts between the deposition testimony of Campbell and Barber and the affidavit testimony of Simpson concerning discussions about the Alabama termite cases. We have said that where “no testimony is presented orally before the trial court, this Court will review without any presumption in favor of the trial court’s findings and sit in judgment on the evidence.” Bownes v. Winston County, 481 So.2d 362, 364 (Ala.1985). Here, one witness, Bart Mallory, testified before the special master; however, Mallory’s testimony sheds no light on the alleged conflicts. Therefore, this Court must sit in judgment on the other evidence before the special master concerning this issue. After reviewing the affidavit and deposition testimony at issue, we conclude that Terminix has not demonstrated a “clear legal right” to additional discovery that would signify an abuse of discretion by the trial judge.
WRIT DENIED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, COOK, and SEE, JJ., concur.
LYONS, J., recuses himself.