Leon F. **AKERLY**

v.

**RED BARN SYSTEM, INC., et al.**

**Appeal of HARRISBURG BARNS, INC., et al.**

**No. 76–1612.**

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1977.

Decided Jan. 26, 1977.

**541**

James C. Wood, Keith A. Clark, Shumaker, Williams & Clark, Harrisburg, Pa., for appellants.

Louis R. Koerner, Jr., Koerner & Babst, New Orleans, La. for appellee.

Before VAN DUSEN and ADAMS, Circuit Judges, and TEITELBAUM, District Judge.*

* Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

ADAMS, Circuit Judge.

The present appeal poses two independent questions. We must determine whether this Court has jurisdiction over an appeal from a denial of a motion to dismiss a complaint, when the motion has been premised on the allegedly unethical character of the representation by the attorneys for the plaintiff. Also, we are obliged to decide whether the district court abused its discretion in refusing to disqualify plaintiff's lead counsel, after having disqualified his local co-counsel.

I.

When plaintiff Akerly initially contemplated commencing this litigation, he retained Robert Woodside, Esquire, of the Harrisburg law firm of Woodside, Woodside & Zwally. Mr. Woodside researched the matter and composed a rough draft of a complaint sounding in assumpsit. The assumpsit complaint, however, was never filed and was not utilized in any way by counsel who was later retained by Akerly.

In 1971, Akerly turned to Louis Koerner, Jr., Esquire, of New Orleans, for assistance with his claim. Mr. Koerner prepared an entirely new complaint, grounded on alleged violations of the antitrust and securities laws. The pleading drafted by Mr. Koerner was the one eventually used. It appears that in the course of his work Mr. Koerner spoke with Mr. Woodside about the filing of the new complaint. Since the time he had first been contacted by Akerly, Mr. Woodside had become a partner in the firm of Shearer, Mette, Hoerner & Woodside, an entity which was the result of a merger between his old partnership and another Harrisburg law firm.[1]

During their exchange, Mr. Woodside suggested that Mr. Koerner enlist Thomas Beckley, a lawyer in his firm, as local counsel, on the basis that Mr. Beckley was more

1. The other firm was Shearer, Mette & Hoerner.

actively engaged in litigation at that time. Mr. Koerner agreed, and Mr. Beckley proceeded to serve as local counsel.

Mr. Beckley had become associated with Mr. Woodside by way of the merger of the Shearer and Woodside firms.[2] From 1969 until 1972 Mr. Beckley was employed by the old Shearer firm. And prior to 1969, Mr. Beckley had been associated with yet another law office, Rhoads, Sinon & Reader.

Among the clients of the Rhoads firm during Mr. Beckley's tenure there were defendant Lapitsky, and Camp Hill Restaurant, Inc., a corporation that is related to defendant Harrisburg Barns, Inc. Although most of the services for these clients were rendered by Merrill Yohe, Jr., Esquire, and Howell Mette, Esquire,[3] it also appears that Mr. Beckley performed incidental tasks for them.

On August 7, 1973, the defendants filed a motion in the district court seeking the dismissal of Akerly's complaint on account of an alleged conflict of interest by plaintiff's counsel or, in the alternative, the disqualification of attorneys Beckley and Koerner for the same reason. After extensive hearings, Judge Sheridan disqualified Mr. Beckley, but denied all other relief.

Judge Sheridan's memorandum opinion, written in response to the motion, discussed only the issue of the disqualification of the attorneys. In the course of the opinion, the trial judge made a finding that, while the representation by the Rhoads firm of Mr. Lapitsky and Camp Hill Restaurant was "substantially related" to the subject matter of the present suit, Mr. Beckley's work was not so related. Nor, Judge Sheridan concluded, were any confidences directly

placed by Mr. Lapitsky and Camp Hill Restaurant with Mr. Beckley during the years Mr. Beckley had been at the Rhoads firm. Disqualification of Mr. Beckley was found by the district judge to be warranted, nonetheless, since there was some chance—albeit a small one—that Mr. Beckley was privy to some confidences while a lawyer with Rhoads. But Judge Sheridan found that there was no possibility that confidences of Mr. Lapitsky and Camp Hill Restaurant had found their way to Mr. Koerner, and that the removal of Mr. Beckley would prevent any disclosures from happening in the future.

Plaintiff Akerly has not appealed from the order disqualifying his local counsel, Mr. Beckley. Defendants, however, have sought review of the denial by the district court of their motion to dismiss and the district court's refusal to disqualify Mr. Koerner.

We have concluded that this Court has jurisdiction over the order rejecting the proposed disqualification of Mr. Koerner, that we lack jurisdiction over the appeal from the refusal of the district court to dismiss the complaint, and that the denial of the motion to disqualify Mr. Koerner must be affirmed.

## II.

Our jurisdiction over the order by Judge Sheridan refusing to disqualify Mr. Koerner is predicated on 28 U.S.C. § 1291, which authorizes an appeal from a final judgment of a district court.[4] Although a decision relating to an attempt to disqualify an attorney is not a classic final order, we have decided on a number of occasions that

**2.** In January 1973, Mr. Beckley left the merged Shearer-Woodside firm to become a member of the new firm of Beckley & Grove.

**3.** As was the case with Mr. Beckley, Mr. Mette left Rhoads to become a member of the Shearer firm. He is still a partner with the merged Shearer-Woodside firm. Mr. Mette has had no association with the Akerly suit while at the Shearer-Woodside firm.

**4.** At oral argument, the Court raised, *sua sponte*, the question whether Judge Sheridan's

order actually extended to denying the motion to disqualify Mr. Koerner. It appears that while the order explicitly mentions the disqualification of Mr. Beckley and the refusal to dismiss the complaint, it failed specifically to discuss the motion to disqualify Mr. Koerner. The order did, however, deny all "other relief." Since Judge Sheridan's opinion discussed the proposed disqualification of Mr. Koerner, we have concluded that the denial of "other relief" should be construed to encompass this issue.

such matters are reviewable under the collateral order doctrine.[5]

A denial of a motion to dismiss, however, even when based on alleged attorney misconduct, is neither a final judgment nor the type of district court decision that is subsumed by the collateral order doctrine. Nor do we believe that our jurisdiction over the disqualification question empowers us to undertake a separate consideration of the denial of the motion to dismiss.

We recognize that by declining to rule that the exercise of the collateral order doctrine gives this Court jurisdiction over all other issues in a case, we are treating that doctrine in a manner that diverges from our interpretation of interlocutory appeals under 28 U.S.C. § 1292(b). In *Katz v. Carte Blanche Corp*,[6] we held that in a section 1292(b) appeal a court of appeals can review not only the "controlling question of law" set forth in the district court's certification, but "every order which if erroneous, would be reversible error on final appeal." [7] However, *Katz*, in our opinion, is distinguishable from the situation before us.

■ The *Katz* court justified its conclusion by noting that one of the purposes of the section 1292(b) procedure is the avoidance of unnecessary trials, and that immediate review of all potentially reversible rulings furthers this goal.[8] Consideration of collateral orders, on the other hand, is founded upon the separability of such orders from the remainder of the case, and not upon a concern for judicial efficiency.

■ Further, this Circuit has consistently maintained that the collateral order doctrine should be sparingly applied,[9] and that utilization of section 1292(b) rather than relaxation of standards for mandatory appeals should be seen as the preferred vehicle for seeking review of arguably interlocutory orders.[10] This restrictive attitude towards the collateral order doctrine would also appear to be relevant in determining whether *all* issues in a controversy should be examined by this Court when only *one* issue is an appealable collateral order.

### III.

■ The crux of the defendants' argument that Mr. Koerner should be disqualified is that such a result is required by the disqualification of his co-counsel, Mr. Beckley. This Court is urged to adopt a *per se* rule that if one co-counsel is disqualified for ethical reasons, all co-counsel must be barred from representation. We decline to follow such a path. Instead, we adhere to the mode of analysis employed in earlier attorney disqualification controversies—a careful sifting of all of the facts and circumstances.[11]

■ Upon undertaking such a scrutiny, we conclude that Judge Sheridan's action did not constitute an abuse of discretion for two reasons. First, although the question of Mr. Beckley's disqualification—the foundation upon which defendants wish to build—is not before us, we note that it was a close issue. The evidence presented at the hearings apparently convinced the dis-

5. *See, e.g., Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1088 (3d Cir. 1976); *Kroungold v. Triester*, 521 F.2d 763 (3d Cir. 1975); *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975); *Greene v. Singer Co.*, 509 F.2d 750 (3d Cir. 1971); *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

6. 496 F.2d 747 (3d Cir. 1974) (en banc).

7. *Id.* at 755. *See also Johnson v. Alldredge*, 488 F.2d 820 (3d Cir. 1973), *cert. denied*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974).

8. 496 F.2d at 755.

9. *See e.g., Bachowski v. Usery*, Nos. 76–1802, 76–1820, 545 F.2d 363 (3d Cir. 1976); *Borden Co. v. Sylk*, 410 F.2d 843, 845–46 (3d Cir. 1969).

10. *See, e.g., Bachowski v. Usery*, Nos. 76–1802, 76–1820, 545 F.2d 363 (3d Cir. 1976); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc).

11. *See e.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975); *id.* at 758–60 (Adams, J., concurring). *Cf. Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530 (3d Cir. 1976).

trict court that Mr. Beckley's work at the Rhoads firm was not "substantially related" to the substance of the present action, and that defendants had not reposed any confidences in Mr. Beckley. The order of disqualification thus was bottomed on what the district judge characterized to be a slim possibility that Mr. Beckley may have been exposed to such confidences during his employment with the Rhoads firm. This, then, was a borderline case for disqualification, particularly in view of the fact that Judge Sheridan found no substantial relationship between Mr. Beckley's current and past representations, and since it may be inferred from Judge Sheridan's opinion that there was no real possibility that Mr. Beckley may have acquired confidences that are substantially related to this litigation while he was employed at the Rhoads firm.[12] Given the narrow basis of this disqualification, we do not believe that it was an abuse of discretion for the trial judge to decline to go a step further and disqualify Mr. Koerner as well, especially when the trial judge unequivocally found that there was no possibility that confidences of the defendants may have been transmitted to Mr. Koerner.

Our conclusion is fortified by the nature of Mr. Beckley's representation of Akerly and of his co-counsel relationship with Mr. Koerner. Mr. Beckley's role in the case at bar was admittedly a peripheral one. Although Mr. Beckley did discuss the matter with Mr. Koerner, it was Mr. Koerner who was guiding the matter through the district court and was the moving force in this litigation.[13] Moreover, Judge Sheridan specifically found that Mr. Beckley was not a conduit of confidential information to Mr. Koerner. Finally, the co-counsel relationship between Messrs. Beckley and Koerner was not an active one. Mr. Koerner retained local co-counsel only because he believed that employment of such an attorney was necessary to comply with certain local rules. He did not retain Mr. Beckley because of his special skills and knowledge. Indeed, Mr. Koerner testified without contradiction that he "could have gotten anybody."

We therefore conclude that, in light of the limited nature of the disqualification of Mr. Beckley and his minor role in the litigation, the district court did not abuse its discretion by refusing to disqualify Mr. Koerner.[14]

It is appropriate to stress the importance of avoiding proposed representations that may generate the appearance as well as the actuality of professional impropriety. Although we do not disturb Judge Sheridan's action in refusing to disqualify Mr. Koerner, this should not necessarily be taken as manifesting approval of what transpired here. It may have been more prudent to have selected as local co-counsel an attorney who had enjoyed no prior professional relationship whatsoever with the defendants. This is particularly so since it was conceded at the hearing that lead counsel "could have gotten anybody" to perform

---

12. Cf. *American Roller Co. v. Budinger*, 513 F.2d 982, 984–85 (3d Cir. 1975).

This Court has adopted the position that an attorney should be disqualified if he may have acquired material that is substantially related to his disputed representation in the course of a prior employment. *See American Roller Co. v. Budinger, supra; Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972).

Several other courts have ruled that the showing of a substantial relationship between an attorney's current and past representations is the prerequisite for an order of disqualification. *See, e.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975); *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D. N.Y. 1953). It should be noted that this Court cited *T. C. Theatre* with approval in both *Budinger* and *Richardson*.

13. For example, Judge Sheridan found that in drafting the complaint, Mr. Koerner relied solely upon information provided by Akerly and not upon any discussions with Messrs. Woodside or Beckley.

14. It is noted that the only other reported court of appeals opinion on co-counsel disqualification, *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971), supports our conclusion. Indeed, we believe that the facts of the case at bar point more strongly to non-disqualification, since the disqualified co-counsel in *American Can* occupied a far more active role in that litigation than did Mr. Beckley here.

this role. It would be preferable for attorneys—especially in these times when public confidence in the integrity of the bar has become an important issue—to employ a cautious approach to this type of matter.

### IV.

At oral argument, counsel for the defendants, while admitting that Judge Sheridan's denial of the motion to dismiss was not appealable, as such, contended that dismissal of the complaint might be appropriate ancillary relief to the requested disqualification of Mr. Koerner, a question which is properly before us. However, since we hold that the district judge did not abuse his discretion when he declined to disqualify Mr. Koerner, the proposed ancillary relief would, of course, be unwarranted.

Having concluded that we have jurisdiction over the order of the district court in which it refused to disqualify attorney Koerner, that portion of the order will be affirmed. The appeal from the denial of the motion to dismiss the complaint will be quashed for lack of jurisdiction.[15]

**15.** Even if there were jurisdiction, there does not appear to be sufficient evidence adduced to justify a dismissal of the plaintiff's complaint as a sanction for the alleged attorney conflict that has been presented to this Court.